**Mirian Cathryn ROSE, Plaintiff,**

v.

**CITY OF LOS ANGELES, a municipal entity; Daryl Gates, Salvador Apodaca (# 21244), Deputy Chief Ronald Frankle, Deputy Chief Bernard Parks, Captain Patrick McKinley, Captain Richard L. Bonneau, Lieutenant Peter Durham, Sergeant Jerry Thomas, Sergeant Donn Yarnall, individually and in their official capacities, Does 1 through 200, Defendants.**

**No. CV 91–6807 RG.**

United States District Court,
C.D. California.

Jan. 22, 1993.

Robert Mann, for plaintiff.

Peter N. King, Deputy City Atty., for defendants.

## MEMORANDUM DECISION AND ORDER

GADBOIS, District Judge.

Defendants' Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), was scheduled for hearing before this Court, Honorable Richard A. Gadbois, Jr., presiding, on October 26, 1992. Peter N. King, the Deputy City Attorney appeared on behalf of Defendants, City of Los Angeles, et. al. Robert Mann appeared on behalf of Plaintiff. After hearing oral argument and after full consideration of the papers submitted by both parties as well as the record and file herein, the Court has made the following determinations.

## I. BACKGROUND

This lawsuit stems from events occurring on November 7, 1990, involving Plaintiff's son, Herbert Rose ("Rose") and the Los Angeles Police Department ("LAPD"). Late in the evening on November 6, 1990, two uniformed patrol officers from the LAPD's Hollywood Division responded to a call from a victim of an armed robbery. The robbery occurred at an automatic teller machine at a Home Savings Bank on North La Brea Avenue. After receiving a description of the suspects, K–9 units from LAPD's Metropolitan Division were called to the scene to conduct a search for one of the outstanding suspects, Rose. When Defendant police officer Salvador Apodaca ("Officer Apodaca"), accompanied by a police dog, found the suspect, the police dog allegedly mauled Rose, severing his femoral artery. Defendants claim that Rose had a 9 mm pistol, which he pointed at Officer Apodaca while he was on the ground being attacked by the dog. Defendants further assert that Officer Apodaca had no other choice but to shoot Rose in self-defense. Rose (hereinafter, "the Decedent") was pronounced dead at the scene.

Following her son's death, the Plaintiff filed a civil rights action under 42 U.S.C. § 1983 and other provisions of the Civil Rights Act. In May 1992, Defendants brought a Motion for Judgment on the

Pleadings pursuant to Fed.R.Civ.P. 12(c). On May 21, 1992, this Court ordered the parties to submit additional briefings on whether and in what circumstances a person may assert a § 1983 claim for damages resulting from the unconstitutional death of another. On July 14, 1992, this Court dismissed Counts 1–7 of the original complaint without prejudice.

Attempting to remedy the deficiencies in her original complaint, Plaintiff lodged a First Amended Complaint, dated July 29, 1992 (the "FAC"). In the FAC the Plaintiff alleged the following causes of action:

**Count 1:** the conduct of each Defendant violated the right of Plaintiff to her familial relationship with Decedent protected under the U.S. Const. amend. XIV;

**Count 2:** the conduct of each Defendant violated the right of Plaintiff to due process of law. The due process violations resulted from the falsification of official reports concerning the incident by the Defendants;

**Count 3:** each Defendant conspired to deprive Decedent of the equal protection of the laws based on a racially-motivated bias against the Decedent;

**Count 4:** the conduct of each Defendant violated the right of Decedent under 42 U.S.C. § 1983 to be secure in home, person, and effects against unreasonable searches and seizures;

**Count 5:** pursuant to Cal.Civ.Code § 51.7, Defendants use of force against Decedent entitles Plaintiff to recover damages for violence against Plaintiff's person;

**Count 6:** pursuant to Cal.Civ.Code § 52.-1(b) Defendants use of violence against Decedent entitles Plaintiff to recover damages for violation of Plaintiff's right to her familial relationship;

**Count 7:** pursuant to Cal.Civ.Code § 52.-1(b) Defendants are liable to Plaintiff for the wrongful death of her son; and

**Count 8:** Plaintiff also seeks declaratory and injunctive relief.

Defendants now bring this motion to dismiss, pursuant to Rule 12(b)(6).

## II. JURISDICTION

Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. This is a civil rights action under 42 U.S.C. § 1983, *et seq.*, with various supplemental state law claims.

## III. ANALYSIS

### A. *Standard For Dismissal Pursuant to Rule 12(b)(6)*

Dismissal of an action pursuant to Rule 12(b)(6) is strongly disfavored. The accepted rule is that "a complaint is not to be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Court must take all allegations of the plaintiff as true and the complaint must be construed in the light most favorable to the plaintiff. This Court analyzes below whether the Defendants have met the burden of proof required under Rule 12(b)(6) for dismissing Counts 2 through 6 and Count 8.

#### 1. *Count 2*

In Count 2, plaintiff alleges:

The conduct of each defendant violated the rights of plaintiff to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and entitles plaintiff to recover damages pursuant to 42 U.S.C. § 1983. The due process violations include defendants' violation of those provisions of state law alleged in paragraph 12 above; and concealing the facts and defendants falsifying official reports concerning the incident so as to impair plaintiff's ability to sue and recover damages for the wrongful death of her son and for the violation of her right to her familial relationship with her son protected under the Fourteenth Amendment to the U.S. Constitution.

The allegations in Count 2 may state a federally cognizable claim provided that Defendants' actions can be causally connected to a failure to succeed in the present lawsuit. However, if Plaintiff were to succeed in this

suit, then her cover-up allegations would be mooted. *See Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 625 (9th Cir.1988). Because the ultimate resolution of the present suit remains in doubt, Plaintiff's cover-up claim is not ripe for judicial consideration. Accordingly, this Court dismisses Count 2 without prejudice.

### 2. *Count 3*

■ Defendants assert that Count 3[1] should be dismissed because it fails to state a claim upon which relief may be granted. The courts are uniform in insisting that a § 1983 plaintiff allege a deprivation of her own constitutional rights. Therefore, Count 3 must fail if plaintiff is attempting to maintain an action for a violation of Decedent's constitutional rights on her own behalf. This is the second time the Defendants have asked this Court to dismiss this cause of action.

■ It is well established that the federally protected rights that are enforceable under § 1983 are "personal" to the injured party. Accordingly, a § 1983 claim must be based upon the violation of Plaintiff's personal rights, and not the rights of someone else. A surviving relative who can demonstrate that a wrongful killing violated her own constitutional rights does have a valid cause of action.

Numerous courts, including the Ninth Circuit have allowed parents to assert § 1983 constitutional claims based upon the wrongful deaths of their children, typically by law enforcement officers. *See Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir.1985). These decisions reason that parents have a due process right to raise their children and that this right is extinguished by the wrongful death of a child.

It must be noted, however, that under § 1988, a § 1983 claim that accrued before death survives the decedent when state law authorizes a survival action as a "suitable remed[y] ... not inconsistent with the Constitution and laws of the United States ..." 42 U.S.C. § 1988 (1982). *See Robertson v. Wegmann*, 436 U.S. 584, 588–90, 98 S.Ct. 1991, 1994–95, 56 L.Ed.2d 554 (1978). Under California's survival statute, "no cause of action [is] lost by reason of the death of any person but may be maintained by ... the person's personal representative." Cal.Prob. Code § 573. The Probate Code defines a personal representative as an "executor, administrator, administrator with the will annexed, special administrator, successor personal representative, or a person who performs substantially the same function under the law of another jurisdiction governing the person's status." Cal.Prob.Code § 58.

As defendants note, Plaintiff has not alleged that she is the personal representative of Decedent's estate as that term is defined by the Probate Code. Instead, she has only maintained that she is the decedent's sole heir. Her status as "heir," however is only relevant to her wrongful death action, which she has plead in Count 7.[2]

It is true that some courts have allowed parents to sue for a decedent's constitutional deprivations even though no estate has been set up. *Roman v. City of Richmond*, 570 F.Supp. 1554, 1557–58 (N.D.Cal.1983). In *Roman* the court noted that the purpose for awarding deterrent damages in § 1983 deprivation of life cases has no relationship to whether the estate or the heirs bring the lawsuit. The court emphasized that the essential purpose of § 1983 cannot be made to depend upon the entity bringing the deprivation of life lawsuit. This equitable argument would support Plaintiff's claim that she, as

---

1. In Count 3, plaintiff alleges that "[e]ach police officer defendant agreed, understood and conspired with each other police officer defendant to deprive decedent of the equal protection of the laws under 42 U.S.C. § 1985(3) based on a racially-motivated bias against decedent. Therefore each police officer defendant is liable to plaintiff ... for the violation of the right to her familial relationship protected under the Fourteenth Amendment...."

2. Indeed, in Count 7 of her complaint, plaintiff alleges the following:

   Plaintiff is the sole heir of decedent Herbert Rose. Pursuant to Code of Civil Procedure § 377, defendants are liable to plaintiff for the wrongful death of plaintiff's son Herbert Rose.

the sole heir, can assert violations of the decedent's constitutional rights.

The California survival statute, however, clearly states that it is the personal representative of the decedent who has the right to bring suit. Given that Plaintiff has not asserted that she is the Decedent's personal representative, Count 3 is dismissed without prejudice.

### 3. *Count 4*

Defendants assert that Count 4 must also fail because Plaintiff cannot maintain an action for a violation of Decedent's constitutional rights on her own behalf. Specifically, in Count 4 Plaintiff asserts that

> the conduct of each defendant violated the right of *decedent* to be secure in home, person, and effects against unreasonable searches and seizures and not to be subjected to the use of excessive force, as guaranteed by the Fourth and Fourteenth Amendment ... and entitles plaintiff to recover, as her son's sole heir, damages pursuant to § 1983 in her son's behalf for his physical and emotional damages suffered before his death. (emphasis added).

Defendants rely heavily on *Smith v. City of Fontana,* 818 F.2d 1411 (9th Cir.1987), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987) to support their claim that Count 4 should be dismissed. In *Fontana,* two police officers detained and ultimately killed Rufus Smith, a black man. Relevant for our purposes were the claims brought by decedent's children in their individual capacities under 42 U.S.C. § 1983 alleging excessive force under the Fourth Amendment and a violation of substantive due process under the Fourteenth Amendment. *Id.* at 1417.

In *Fontana,* the Ninth Circuit held that the children could not maintain a cause of action for excessive force under the Fourth Amendment in their individual capacities. The Court reasoned that the children were not directly subjected to the excessive use of state force and that " 'Fourth Amendment rights are personal rights which ... may not be vicariously asserted.' " *Id.* (quoting *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969)).

Since the children were not directly subjected to the excessive use of state force themselves, they could not maintain personal causes of action under § 1983 in reliance on this Fourth Amendment theory.

The Ninth Circuit reached an opposite conclusion with respect to the **substantive due process** claim. In holding that a "constitutional interest in familial companionship and society logically extends" to protect children and parents from unwarranted state interference in their relationships through the use of excessive force, the court noted a long line of Supreme Court cases stressing the importance of familial bonds. *Id.* at 1418.

Relying on that portion of the Ninth Circuit's opinion that dismissed plaintiffs' individual claims based on the Fourth Amendment, Defendants here assert that Count 4, which is plead under § 1983 and alleges various constitutional violations, must be dismissed. Referencing that portion of the *Fontana* opinion that upheld plaintiffs' substantive due process claims, defendants here maintain that plaintiff has not plead a cause of action based on a deprivation of familial companionship and society. Based on the fact that in Count 4 Plaintiff is attempting to recover on her *own* behalf for the alleged excessive force imposed upon decedent, this Count is dismissed with prejudice.

### 4. *Count 5*

Plaintiff's fifth cause of action alleges that Defendants violated Cal.Civ.Code § 51.7. Civ.Code § 51.7 provides:

> All persons within the jurisdiction of this state have the right to be free from violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, or position in a labor dispute.

The California courts have recognized that the "unambiguous language of [Civ.Code § 51.7] gives rise to a cause of action in favor of a **person against whom violence or intimidation has been committed** or threatened." (emphasis added) *Coon v. Joseph,* 192 Cal.App.3d 1269, 1277–78, 237 Cal.Rptr. 873 (1987). Relying on *Coon,* Defendants assert that Plaintiff may not allege a viola-

tion of Decedent's rights on her own behalf under this Code Section. *Coon* specifically states that "as to appellant's claim of violation of civil rights, a brief review of [Civ.Code § 51.7] ... establishes that he has no claim.... The complaint establishes that no violence or intimidation was committed or threatened against [plaintiff's] person and thus no cause of action exists in his own right." *Id.* at 1277–78, 237 Cal.Rptr. 873.

In the FAC Plaintiff states that she is seeking damages for violence against "plaintiff's person." However, Plaintiff alleges that the use of force was against decedent, not against her. The only arguments Plaintiff puts forth as to why Count 5 should not be dismissed is that the Defendants reliance on *Coon* is without merit. Plaintiff's Opposition at 3. Plaintiff asserts that she is suing *in her son's shoes* and is not merely attempting (as was the plaintiff in *Coon* ) to assert a cause of action premised on California Civil Code § 51.7. Independent of the fact that these arguments are unpersuasive on their face (Plaintiff does not cite to any other authority and simply makes conclusory statements), Plaintiff's argument goes against the clear language of the statute and the relevant case law. Accordingly Count 5 is dismissed with prejudice.

### 5. *Count 6*

Plaintiff's Sixth Cause of action states that Defendants' use of violence against Decedent subject them to liability under Cal.Civ.Code § 52.1(b) and Defendant CITY is liable pursuant to Cal.Gov't Code § 815.2. Cal.Civ. Code § 52.1(b) provides

Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

Subdivision (a) of this section states:

Whenever a person or person, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured.

Neither party offers any authority or case law as to who is entitled to bring an action for damages based on Civ.Code § 52.1(b). The specific language of the statute (i.e. "any individual ... may institute and prosecute in his or her own name and on his or her own behalf ..."), however, indicates that under Civ.Code § 52.1(b) Plaintiff may not allege a violation of Decedent's rights on her own behalf. However, the California state courts are better suited to interpret the California laws. Under the authority of 28 U.S.C. § 1367(c) and *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) this Court declines to consider this claim. By dismissing this count without prejudice, this Court preserves the Plaintiff's right to take it to the state court.

### 6. *Count 8*

■ Plaintiff alleges that Defendants permit the deployment of dogs to bite and maul primarily people of African American and Latino descent, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, the Constitution of the State of California, Cal.Civ.Code § 52.1 and Cal.Penal Code §§ 118.1, 149, 203, 205, and 245.

Plaintiff, as an adult resident and taxpayer of the City of Los Angeles, asserts that Defendants' acts and policies constitute a "wasteful, illegal, and unlawful expenditure of taxpayers' funds", and requests the following relief:

1. General damages according to proof;
2. Treble damages pursuant to Cal.Civ. Code § 52(b);
3. A civil penalty in the amount of $10,000 pursuant to Cal.Civ.Code § 52(b);
4. Punitive Damages according to proof in an amount sufficient to punish and make an example of defendants;
5. A declaration that defendants' City and Gates' deployment and use of dogs violates constitutional guarantees under the Fourth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of California;
6. A preliminary and permanent injunction barring LAPD employees from deploying dogs to apprehend person by biting them except under circumstances where the officers are justified in using deadly force;
7. A preliminary and permanent injunction barring the LAPD from using dogs to assist in finding persons, taking persons into custody or for protection against attack until dog handlers and dogs are adequately selected, trained, supervised, and disciplined. Such selection, training, supervision and discipline shall include, at a minimum, the following:

A. Training dogs not to attack or bite persons except upon the special command of the handler;

B. Using psychological tests to screen dog handlers before they are selected to be dog handlers and to periodically monitor dog handlers;

C. Photographing all dog bite injuries in color with high quality cameras such as are routinely used to photograph and record evidence by the Department, in such a manner as to depict the exact nature and extent of the injuries inflicted;

D. Preparing written reports which detail exactly what injuries are inflicted;

E. Immediately transporting all dog bite victims to doctors for medical treatment;

F. Collecting and retaining medical records showing the nature of the injuries inflicted and the treatment rendered;

G. Tape recording interviews of all persons bitten by a dog immediately after such injuries have been inflicted by a monitor appointed by the court regarding the manner in which the injuries occurred, such tape recorded interviews to be transcribed and the tapes preserved under seal of the Court and not to be released to any party except the dog bite victim without order of the Court.

Defendants assert that plaintiff may not maintain this cause of action because no case or controversy exists between Plaintiff and Defendants. As the Ninth Circuit noted in *Fontana,* the U.S. Const. Art. III's "case or controversy" requirement precludes federal courts from considering claims for equitable relief unless the plaintiffs can demonstrate that their threat of future injury by the defendants is "both 'real and immediate,' not 'conjectural or hypothetical.'" *Fontana* at 1421, quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).[3]

Plaintiff recites two arguments in response. First, plaintiff points to Civil Code § 52.1(b), which provides:

Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prose-

---

**3.** In *Fontana,* plaintiffs alleged that the "propensity of [the defendant officers] to employ excessive force against black residents in the future and the City's and supervisory officials' sanction and encouragement of such a practice by all City police officers threaten the physical security of all black people within the jurisdiction of the Fontana Police Department. Fearing future in-

jury at the hands of the Fontana police because of their race, the [plaintiffs] seek injunctive relief against the continued employment of [the defendant officers] in any capacity where the officers would be armed and seek a declaratory judgment that the City's discriminatory policy is unconstitutional." *Fontana,* 818 F.2d at 1421.

cute in his or her own name and on his or her own behalf a civil action for damages, *injunctive relief,* and *other appropriate equitable relief* to protect the peaceable exercise or enjoyment of the right or rights secured.

Plaintiff maintains that defendants actions interfered with her Fourteenth Amendment right to be free from an unreasonable interference with the protected familial relationship. Because of such interference, she claims that she has the right to seek injunctive relief in the manner requested in her complaint.

Second, Plaintiff contends that she may seek injunctive relief because of her status as a taxpayer of the City of Los Angeles. Here, she relies on Cal.Civ.Proc.Code § 526a, which provides:

> An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein ... who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein.

Defendants do not respond to plaintiff's Cal.Civ.Code § 51.2(b) argument. In response to plaintiff's taxpayer argument, defendants merely assert that plaintiff never intended to sue as a taxpayer and that, even if she did, this Court should refuse to exercise jurisdiction over this supplemental state claim. 28 U.S.C. § 1367(c) and *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The Supreme Court has held that federal courts should not consider claims for equitable relief unless a real threat of future injury to the plaintiff exists. While it is difficult to characterize the point at which a threat of future injury becomes "credible," it is clear in this case that Plaintiff has failed to meet this burden with respect to her claim for injunctive and declaratory relief. Accordingly, Count 8 is dismissed without prejudice.

## IV. SUMMARY AND CONCLUSIONS

Under Rule 12(b)(6) a complaint is not to be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Plaintiff, however, can not maintain on her own behalf an action for a violation of the Decedent's constitutional rights.

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Count 2 is dismissed without prejudice;

(2) Count 3 is dismissed without prejudice;

(3) Count 4 is dismissed with prejudice;

(4) Count 5 is dismissed with prejudice;

(5) Count 6 is dismissed without prejudice; and

(6) Count 8 is dismissed without prejudice.

IT IS SO ORDERED.